## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| **ANDREA THOMAS, DEANDRE TINSON, and SHONNIKA SPEARS, on behalf of herself and all others similarly situated,** | **CASE NO.:** |
| | **COLLECTIVE ACTION** |
| **Plaintiffs,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **AMAZON.COM SERVICES, INC., AMAZON LOGISTICS, INC, AMAZON.COM LLC** | |
| **Defendants.** | |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Andrea Thomas ("Thomas"), DeAndre Tinson ("Tinson"), and Shonnika Spears ("Spears") (collectively, "Plaintiffs") through their undersigned counsel, individually, and on behalf of all persons similarly situated, file this Collective Action Complaint ("Complaint") against Defendants Amazon.com Services, Inc., Amazon.com LLC, and Amazon Logistics, Inc. (together, "Amazon" or "Defendants").

The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## INTRODUCTION

1.      This case is about Amazon's unlawful scheme to attempt to avoid

responsibility for paying its Delivery Associates in accordance with applicable wage and hour laws by attempting to contract out that responsibility to third-party Delivery Service Providers ("DSP"), such as COEI, Commercial Express, Inc., AG Plus, JSTC, and Drop a Box.

2.      Amazon jointly employs non-exempt Delivery Associates such as Plaintiffs and members of the proposed Collective, to deliver packages to Amazon customers ("Delivery Associates").

3.      This case is about Amazon's failure to comply with applicable wage laws and to pay non-exempt Delivery Associates for all the time they worked – including overtime – as was required to deliver hundreds of Amazon packages each day and meet Amazon's delivery needs.

## JURISDICTION AND VENUE

4.      Jurisdiction over Plaintiffs' FLSA claim is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

5.      Venue in this Court is proper pursuant to 28 U.S.C. § 1391. Defendants reside in and conduct business in this Judicial District and/or a substantial part of the events of omissions giving rise to Plaintiffs' claims occurred within this district.

## PARTIES AND RELEVANT BACKGROUND

6.      Plaintiff Andrea Thomas is a citizen of Florida and resides in Jacksonville, Florida. Plaintiff worked for Defendants Amazon, Commercial

Express, and JSTC as a Delivery Associate in Florida from approximately June 2018 to January 2019.

7.     Plaintiff DeAndre Tinson is a citizen of Florida and resides in Jacksonville, Florida.   Plaintiff Tinson worked for Defendants Amazon and Commercial Express as a Delivery Associate in Florida from approximately September 2018 to March 2019.

8.     Plaintiff Shonnika Spears is a citizen of Florida and resides in Jacksonville, Florida.   Plaintiff worked for Defendants Amazon, Commercial Express, and Drop a Box as a Delivery Associate in Florida from approximately February 2018 through August 2018, and then for Defendants Commercial Express and JSTC from approximately August 2018 through April 2019.

9.     Defendant Amazon.com LLC was a limited liability company with principal offices in Seattle, Washington, which operated throughout the United States, including in this Judicial District.   On January 1, 2019, Amazon.com LLC merged into Amazon.com Services, Inc. and ceased to exist as an entity.

10.     Defendant Amazon.com Services, Inc. is a company with principal offices in Seattle, Washington, which operates throughout the United States, including in this Judicial District.

11.     Defendant Amazon Logistics, Inc. is a corporation with principal offices in Seattle, Washington, which operates throughout the United States,

including this Judicial District.

12.    Commercial Express, Inc. is a corporation with principal offices in Lake Mary, Florida. Commercial Express, Inc. is the parent company of COEI, with which it has common owners, agents, and a business address.   Commercial Express entered into agreements with or otherwise directed a number of Delivery Service Providers, including the DSPs, to service Delivery Service Provider contracts to which Amazon is a party.    Commercial Express, Inc. is a named Defendant in *Thomas et al. v. JSTC, LLC et al.*, 19-CV-1582 (M.D. Fla.) ("COEI Action").

13.    COEI is a limited liability company with principal offices in Lake Mary, Florida.  COEI is a subsidiary company of Commercial Express, Inc., with which it has common owners, agents, and a business address. COEI provided Delivery Associates to Amazon as a Delivery Service Provider.   COEI is a named Defendant in the COEI Action.

14.    JSTC is a corporation organized under the laws of Florida with principal offices in Melbourne, Florida.  JSTC provided Delivery Associates to Amazon as a Delivery Service Provider.  On information and belief, Commercial Express contracted with and/or otherwise directed JSTC to deliver Amazon packages from Amazon Delivery Stations located in Jacksonville, Florida.  JSTC is a named Defendant in the COEI Action.

15.     AG Plus is a limited liability company with principal offices in Windermere, Florida.  AG Plus provided Delivery Associates to Amazon as a Delivery Service Provider.  Commercial Express entered into a contract with AG Plus, pursuant to which AG Plus delivered Amazon packages from Amazon Delivery Stations located throughout Florida – in Orlando, Davenport, Fort Myers, and Sarasota.  AG Plus is a named Defendant in the COEI Action.

16.     Drop A Box is a corporation with principal offices in Saint Cloud, Florida.  Drop a Box provided delivery Associates to Amazon as a Delivery Service Provider.  On information and belief, Commercial Express contracted with and/or otherwise directed Drop A Box to deliver Amazon packages from Amazon Delivery Stations located in Jacksonville, Florida.   Drop a Box is a named Defendant in the COEI Action.

17.     Defendants COEI, Commercial Express, Inc., AG Plus, JSTC, and Drop a Box are jointly referred to as the COEI Entities.

18.     The unlawful acts alleged in this Complaint were committed by Amazon and/or its officers, agents, employees, or representatives, while actively engaged in the management of Amazon's businesses or affairs.

19.     During times relevant, the Amazon and the COEI Entities acted as joint employers with respect to the Delivery Associates who delivered Amazon's packages.

20.     During times relevant, Plaintiff Tinson was an employee of Amazon, Commercial Express, Inc and COEI and is covered by the FLSA.

21.     During times relevant, Plaintiff Thomas was an employee of Amazon, Commercial Express, and JSTC and is covered by the FLSA.

22.     During times relevant, Plaintiff Spears was an employee of Amazon, Commercial Express, Drop A Box, and/or JSTC and is covered by the FLSA.

23.     Defendants are employers covered by the FLSA.

24.     Defendants employ individuals, including Delivery Associates, in Florida, as well as potentially other states.

25.     Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as described by 29 U.S.C. §§ 206-207.

26.     Defendants' annual gross sales exceed $500,000.

## COLLECTIVE DEFINITION

27.     Plaintiffs bring Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b), as a collective action on behalf of themselves and the following collective:

All current and former Delivery Associates who were paid by Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc. to deliver packages for Amazon in the United States between February

28, 2016[1] and the last date any Delivery Associate performed work for Amazon and the COEI Entities (the "FLSA Collective").[2]

28.     Plaintiffs reserve the right to redefine the FLSA Collective prior to notice or certification, and thereafter, as may be warranted or necessary.

## FACTS

### Amazon and the COEI Entities are Joint Employers

29.     Amazon is one of the largest businesses engaged in the interstate shipment of goods in the United States.

30.     Amazon holds itself out as a company able to transport goods across the United States to customers in a short time period.

31.     Amazon is widely known as a company able to transport goods across the United States to customers in a short time period.

32.     Amazon utilizes Delivery Service Providers, such as Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc., to transport goods across the country to customers in a short time period.

---

[1] Plaintiffs and Amazon entered into a tolling agreement, which tolled the statute of limitations on FLSA Collective Members' claims from the period between February 28, 2019 until April 20, 2021.
[2] The FLSA Collective does not include individuals who were provided with notice and/or who opted in to *Gibbs v. MLK Express, LLC*, Case No. 2:18-cv-434-SPC-MRM, an action pending in the United States District Court for the Middle District of Florida.

33.     Amazon and Delivery Service Providers are in the business of delivering goods across the United States.

34.     Amazon relies on Delivery Service Providers, such as Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc., for the essential services of transporting goods from Amazon warehouses to Amazon customer's doors as quickly as possible.

35.     Delivery Service Providers' delivery services are an integral part of Amazon's business purpose; without the use of Delivery Service Providers like Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc., Amazon could not get their goods to their customers.

36.     Amazon attempts to shield itself from liability by utilizing companies, such as Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc., to provide the employees to transport their goods.

37.     Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc., provides delivery services for Amazon at one or more of Amazon's Delivery Stations

through the use of Delivery Associates such as Plaintiffs and members of the proposed Collective.

38.    Delivery Associates are engaged to fulfill Amazon's nationwide delivery needs and make deliveries of goods from Amazon delivery stations to Amazon customers.

39.    Delivery Associates work in the transportation industry.

40.    The goods that Delivery Associates deliver are purchased by customers using Amazon's digital platform (the Amazon.com website).

41.    As required by Amazon, Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc. provides Delivery Associates, such as Plaintiffs and other Delivery Associates, with a vehicle.

42.    Plaintiff Thomas was hired in June 2018 and worked as a Delivery Associate for Amazon, Commercial Express and JSTC until on or about January 2019 in one of Amazon's Florida Delivery Stations making deliveries of packages on behalf of Amazon.

43.    Plaintiff Tinson was hired in September 2018 and worked as a Delivery Associate for Amazon, Commercial Express until on or about March 2019 in one of Amazon's Florida Delivery Stations making deliveries of packages on behalf of Amazon.

44.     Plaintiff Spears was hired in February 2018 and worked as a Delivery Associate for Amazon, Commercial Express, JSTC, and Drop a Box until on or about April 2019 in one of Amazon's Florida Delivery Stations making deliveries of packages on behalf of Amazon.

45.     The goods that Delivery Associates deliver from Amazon delivery stations to Amazon customers originate, or are transformed into their final condition, in a different state than the delivery state.

46.     The goods Delivery Associates deliver from Amazon delivery stations to Amazon customers are not transformed or modified during the shipping process.

47.     Delivery Associates deliver goods to Amazon customers in the same condition as they were shipped to the Amazon delivery station.

48.     Delivery Associates deliver goods to Amazon customers that were shipped around the United States.

49.     Delivery Associates handle goods that travel interstate.

50.     Delivery Associates are directly responsible for transporting goods in interstate commerce.

51.     Delivery Associates drive vehicles in order to deliver Amazon packages, which is vital to the commercial enterprise of the Delivery Service Provider and Amazon.

52.     A strike by Delivery Associates would disrupt interstate commerce.

53.     Plaintiffs and other Delivery Associates are necessary in order for Amazon goods traveling interstate make it to their final destination.

54.     At all relevant times, Amazon has been affiliated with and/or operating with Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc., with respect to Plaintiffs and other similarly situated employees such that Amazon and Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc., are the "joint employers" of Plaintiffs and other similarly situated employees.

55.     Delivery Associates are provided with and are required to use an Amazon.com "Rabbit," a handheld device that provides the addresses of Amazon.com customers. The "Rabbit" is also used for navigation assistance, package scanning, and as a phone. The "Rabbit" also allows Amazon to contact and track a Delivery Associate's movement and work progress.

56.     Amazon has direct access to the "Rabbit" devices, which are given to and used by each Delivery Associate.

57.     Amazon sets the delivery route that the Delivery Associate will complete.

58.     Amazon assigns and provides routes to Delivery Service Providers, including Commercial Express, COEI, LLC, or any one of its subcontractors, including AG Plus Express, LLC, JSTC, LLC, and/or Drop a Box, Inc.

59.     Amazon supervises and controls the work activities, work schedules, conditions and management of Delivery Associates.

60.     While Delivery Service Providers pay the Delivery Associates, Amazon has both influence and control over how Delivery Associates are paid.  For example, based on a news report of a "leaked internal email," in or around 2018, Amazon made "major changes to how some delivery drivers are paid to 'enable transparency and accuracy of pay'," including "prohibit[ing] [Delivery Service Providers] from paying drivers a flat daily rate." *See* Hayley Peterson, *Leaked email reveals Amazon is changing how delivery drivers are paid following reports of missing wages*, BUSINESS INSIDER, Oct. 2, 2018, https://www.businessinsider.com/amazon-changes-delivery-pay-practices-following-missing-wage-reports-2018-10.

61.     The United States Department of Labor's Wage & Hour Division have, during wage and hour investigations, determined that Delivery Service Providers and Amazon are joint employers as defined in §792.1(b)(3). *See, e.g.,* DOL Case ID: 1888753 and Case ID: 1824581.

**The Nature of the Relationship Between the Amazon and the COEI Entities Delivery Service Providers**

62.     Commercial Express, Inc. is the parent company of COEI.  The

companies are owned and operated by the same individuals -- Max Schottmiller, Peter Schottmiller, Patricia A. Hart – and operate out of the same business address: 335 Lakeview Ave., Lake Mary, Florida 32746.

63.     Commercial Express entered into agreements with or otherwise directed a number of Delivery Service Providers, including the DSPs, to service Delivery Service Provider contracts to which Amazon is a party.

64.     Commercial Express directed and controlled the work of the Delivery Associates who were hired by the DSPs in accordance with mandates as to work, conditions, and management that are set by Amazon.

65.     Amazon was aware of this practice.

66.     Commercial Express entered into a contract with AG Plus Express, LCC pursuant to which AG Plus Express, LCC delivers Amazon packages from Amazon Delivery Stations located throughout Florida, in Orlando, Davenport, Fort Myers, and Sarasota.  *See*, First Amended Complaint, *Optimal Logistics LLC et al. v. AG Plus Express, LLC et al.*, 6:18-cv-02224, ¶ 18 (M.D. Fl. Jan 29, 2019) (Dkt. No. 15).

67.     On information and belief, Commercial Express also contracted with or otherwise directed JSTC, LLC and Drop A Box, Inc. to deliver Amazon packages from Amazon Delivery Stations located in Jacksonville, Florida.

68.     Along with Amazon, Commercial Express controlled the work activities, policies, conditions, and management of the Delivery Service Providers

with whom they contracted, including the DSPs, and the Delivery Associates that those Delivery Service Providers hired, such as Plaintiffs. On information and belief, these specifications concerning work activities, policies, conditions, and management that that Commercial Express imposes were dictated by Amazon.

69. For example, in a portion of the contract between Commercial Express and AG Plus Express, LLC, Commercial Express provided that it would set the distribution points from which AG Plus Express, LLC Delivery Associates would receive packages, set specified windows in which Delivery Associate must make these deliveries, establish the Delivery Associates' uniform according to specifications set out in the contract, and set other terms and policies with which AG Plus Express, LLC and its Delivery Associates were required to comply. *See*, First Amended Complaint, *Optimal Logistics LLC et al. v. AG Plus Express, LLC et al.*, Exh. A, 6:18-cv-02224 (M.D. Fl. Jan 29, 2019) (Dkt. No. 15).

70. On information and belief, Commercial Express maintained the right to directly enforce Amazon policies and procedures on the Delivery Associates hired by the DSPs.

71. For example, in its contract with AG Plus Express, LLC, Commercial Express provided that it was entitled to review compliance with its terms and policies through inspection of AG Plus Express, LLC's business records, on site visits, "ride-along" observations of the Delivery Associates performing their job

duties, and other inspections of the processes and procedures related to the delivery operations. *Id.* And, if any review established noncompliance with the terms and policies, the contract provided that Commercial Express had the right to demand prompt cure of the non-compliance. *Id.*

72.     On information and belief, Commercial Express entered into agreements with JSTC, LLC and Drop a Box, Inc. that had substantially similar terms to those set out in its contract with AG Plus Express, LLC.

### The Nature of Plaintiffs and Delivery Associates' Work

73.     The nature of the work performed by Delivery Associates is similar and standardized at each of the Delivery Station(s) where the DSPs provide services for Amazon, as the nature of the work is centrally controlled and directed by Amazon and Commercial Express.

74.     Plaintiffs and other Delivery Associates began their shifts once they arrived at an Amazon facility to pick up their assigned vehicle or when they pick up their vehicle at an offsite facility.

75.     Once the vehicle was picked up, Plaintiffs and other Delivery Associates would drive the vehicles to a separate Amazon Delivery Station. Upon arrival, Plaintiffs and Delivery Associates would pick up their assigned route, a "Rabbit" handheld scanning device, gas card, and packages.

76.     Plaintiffs and other Delivery Associates were regularly scheduled to

work five (5) or more days per week, with shifts that were scheduled for ten (10) hours.

77.     Although shifts were scheduled for ten (10) hours per day, all of the work-related activities that Plaintiffs and other Delivery Associates were required to and did perform often took ten (10) or more hours per day to complete.

78.     Plaintiffs regularly worked more than forty (40) hours a week. Plaintiffs observed that other Delivery Associates routinely worked similar hours.

79.     On average, Plaintiffs delivered between approximately 200-300 Amazon packages per shift.  Plaintiffs observed that other Delivery Associates routinely delivered a similar number of packages.

80.     Even after Plaintiffs were finished delivering their assigned packages, Defendants routinely required them to "rescue" other Delivery Associates by going to meet other Delivery Associates in the field to help deliver some of their packages. Plaintiffs were directed to "rescue" other Delivery Associates and observed other Delivery Associates do the same.

81.     Upon return to the Amazon Delivery Station, Plaintiffs and other Delivery Associates had to unload their vehicles and check in with supervisors concerning the day's route.

82.     After leaving the Amazon Delivery Station, Plaintiffs and other Delivery Associates had to park the vehicles at the separate off-site location.

83.    Plaintiffs observed other Delivery Associates routinely work similar schedules. Defendants were not only aware of and permitted this practice, but the work schedules and conditions imposed by Defendants effectively required this practice.

## Defendants Failed to Pay Delivery Associates Properly

84.    Plaintiffs and other Delivery Associates regularly worked more than 40 hours per week.

85.    Plaintiffs and other Delivery Associates regularly worked five (5) or more days per week.

86.    Amazon and the COEI Entities did not pay Plaintiffs and other Delivery Associates for all hours worked in excess of forty (40) hours in a workweek and did not pay proper overtime premiums.

87.    Until directed to change pay policies by Amazon, the COEI Entities paid the Delivery Associates a fixed amount of pay per day, and regularly did not pay overtime premiums for hours worked more than forty in a workweek.

88.    On atypical occasions when the COEI Entities did pay additional amounts on weeks that Plaintiffs worked more than forty hours per week, these amounts paid did not meet overtime requirements.

89.    Plaintiff Tinson was paid $130 per scheduled ten-hour shift and he was not paid an overtime premium, despite regularly working more than 40 hours per week.

90.    For example, for the pay period between December 9, 2018 and December 15, 2018, Plaintiff Tinson's paystub reflected 50 hours of work paid at $13 per hour, with no overtime premiums paid, as follows:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 13.0000 | 50.00 | 650.00 | 3,770.00 |
| Gross Pay | | | $650.00 | 3,770.00 |

91.    Plaintiff Thomas was paid $130 per scheduled ten-hour shift and she was not paid an overtime premium, despite regularly working 50-60 hours or more per week.

92.    For example, for the pay period between November 12, 2018 and November 18, 2018, Plaintiff Thomas's paystub reflected sixty hours of work paid at $13 per hour, with no overtime premiums paid, as follows:

| PAY | Hours | Rate | Current | YTD |
|---|---|---|---|---|
| Regular Pay | 60.00 | 13.00 | 780.00 | 5,810.00 |
| Other Earnings | - | - | 0.00 | 3,900.00 |

93.    Plaintiff Spears was paid $130 per scheduled ten-hour shift and she was not paid an overtime premium, despite regularly working 50 hours or more per week.

94.     For example, Plaintiff Spears' paystub reflected that she was paid "Daily" and set a pay rate at $130 per day, with no overtime premiums paid.

95.     Some Delivery Associates also received other forms of compensation for services in addition to the fixed sum of work per day.

96.     Amazon and the COEI Entities' pay policy, in which Plaintiff and other Delivery Associates are not compensated for all time worked and are not paid an overtime premium for all hours worked in excess of 40 per workweek, does not comply with the requirements of the Fair Labor Standards Act.  *See Hickman v. TL Transportation LLC*, 317 F. Supp. 3d 890 (E.D. Pa. 2018) (granting summary judgment to the plaintiff in holding that a similar compensation scheme by another company that provided delivery services for Amazon violated the FLSA).

97.     In or around 2018 or early 2019, the COEI Entities began paying Delivery Associates an hourly rate plus overtime.

98.     Based on information and belief, this pay change was dictated by Amazon and communicated to DSPs across the country, including the COEI Entities.

99.     Even after Amazon and the COEI Entities began paying Delivery Associates on an hourly basis, they both failed to count all hours worked for purposes of overtime and failed to include all forms of payment in the regular rate for purposes of calculating overtime compensation.

100.    COEI's contract with Amazon was terminated in or around 2019.

### The Failure to Properly Pay Delivery Associates Is Willful

101.    Defendants' actions in violation of the FLSA were or are made willfully in an effort to avoid liability under the FLSA.

102.    Despite being able to track Amazon packages to the second, Defendants have failed to make, keep and preserve records with respect to the Plaintiffs and other Delivery Associates sufficient to determine their lawful wages, actual hours worked, and other conditions of employment as required by law. *See, e.g.,* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

103.    Even though the FLSA and applicable state law requires overtime premium compensation for hours worked over 40 per week, Defendants do not pay Delivery Associates, such as Plaintiffs, proper overtime premium compensation for overtime hours worked.

104.    Defendants knew or, absent their own recklessness should have known, that the Delivery Associates were entitled to such overtime premiums.

105.    Defendants have failed to pay Plaintiffs and Delivery Associates all overtime compensation owed.

106.    By failing to pay the all overtime compensation owed to Plaintiffs and

other Delivery Associates, Defendants have acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

107.   Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

108.   Plaintiffs desire to pursue their FLSA claims on behalf of any individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

109.   Plaintiffs and the FLSA Collective are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals worked pursuant to Defendants' previously described common pay practices and, as a result of such practices, were not paid for all hours worked when they worked more than forty (40) hours per week and were not paid the full and legally mandated overtime premium for hours worked over forty (40) during the workweek. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common compensation, timekeeping and payroll practices.

110.   Specifically, Defendants failed to pay overtime at time and a half (1½) the employee's regular rate as required by the FLSA for hours worked in excess of forty (40) per workweek.

111.   The similarly situated employees are known to Amazon and the COEI

Entities and are readily identifiable and may be located through Amazon and the COEI Entities' business records and the records of any payroll companies Amazon and the COEI Entities use.

112.    Amazon and the COEI Entities employ many FLSA Collective Members throughout Florida. These similarly situated employees may be readily notified of the instant litigation through direct means, such U.S. mail and/or other appropriate means, and should be allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their similar claims for overtime and other compensation violations, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

**COUNT I**
**Violation of the FLSA**
**(On Behalf of Plaintiffs and the FLSA Collective)**

113.    All previous paragraphs are incorporated as though fully set forth herein.

114.    The FLSA requires that covered employees be compensated for all hours worked in excess of forty (40) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed.  *See* 29 U.S.C. § 207(a)(1).

115.    Amazon is subject to the wage requirements of the FLSA because Amazon is an "employer" under 29 U.S.C. § 203(d).

116.    The FLSA recognizes that more than one entity can be responsible for wage violations as an employer.  Indeed, the FLSA's very broad definition of "employ"—which includes to "suffer or permit to work"—was designed to reach businesses, such as Amazon, that use middlemen such as the COEI Entities, to directly employ Delivery Associates.

117.    The FLSA defines an employee as 'any individual employed by an employer, an employer to include any person acting directly or indirectly in the interest of an employer in relation to an employee, and the term employ to include to suffer or permit to work. 29 U.S.C. §§ 203(e)(1), 203(d), 203(g).

118.    In 1945, the Supreme Court noted that "the term 'employee'" in the FLSA has "'the broadest definition . . . ever . . . included in any one act.'" *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)).

119.    The FLSA must be construed liberally because broad coverage is essential to accomplish its goals. One goal is to root out wage and hour violations by holding "businesses [that] allow work to be done on their behalf" and have the power "*to prevent wage and hour abuses responsible, regardless of indirect business relationships or business formalities*." *See New York v. Scalia*, No. 1:20-cv-1689-GHW, 2020 WL 5370871, *20 (S.D.N.Y. Sept. 8, 2020) (quoting Kati L. Griffith, The Fair Labor Standards Act at 80: Everything Old Is New Again, 104 Cornell L.

Rev. 557, 571 (2019)) (emphasis added).

120.   At all relevant times, Amazon was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203.

121.   During all relevant times, Plaintiffs and Collective Members were covered employees entitled to the above-described FLSA protections.  *See* 29 U.S.C. § 203(e).

122.   Plaintiffs and Collective Members are not exempt from the requirements of the FLSA.

123.   Plaintiffs and Collective Members are entitled to be paid overtime compensation for all hours worked over forty (40) in a workweek pursuant to 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

124.   Amazon and the COEI Entities' compensation scheme applicable to Plaintiffs and Collective Members failed to comply with either 29 U.S.C. § 207(a)(1) or 29 C.F.R. § 778.112.

125.   Amazon and the COEI Entities knowingly and/or through willful ignorance, failed to compensate Plaintiffs and Collective Members for all hours worked when they worked in excess of forty (40) hours per week and failed to pay proper overtime premiums at a rate of one and one-half (1 ½) times their regular hourly wage, in violation of 29 U.S.C. § 207(a)(1) and 29 C.F.R. § 778.112.

126.    Amazon and the COEI Entities also failed to make, keep, and preserve records with respect to Plaintiffs and Collective Members sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

127.    In violating the FLSA, Amazon and the COEI Entities acted willfully and with reckless disregard of clearly applicable FLSA provisions.

128.    Pursuant to 29 U.S.C. § 216(b), employers such as Amazon and the COEI Entities, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages, liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and all others similarly situated:

a.    An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b.    Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Collective members;

c.    Back pay damages (including unpaid overtime compensation, unpaid spread of hours payments and unpaid wages) and prejudgment interest to the fullest extent permitted under the law;

d.    Liquidated damages to the fullest extent permitted under the law;

e.   Litigation costs, expenses and attorneys' fees to the fullest extent permitted under the law; and

f.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues of fact.

Dated:        April 22, 2021              Respectfully submitted,

*/s/ Janet R. Varnell*
Janet Varnell; FBN: 0071072
Brian W. Warwick; FBN: 0605573
VARNELL & WARWICK P.A.
P.O. Box 1870
Lady Lake, FL 32158
Tel: (352) 753-8600
Fax: (352) 504-3301
jvarnell@varnellandwarwick.com

Sarah R. Schalman-Bergen
Krysten Connon
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel.: (617) 994-5800
Fax: (617) 994-5801
ssb@llrlaw.com
kconnon@llrlaw.com

Ryan Allen Hancock
WILLIG, WILLIAMS & DAVIDSON
1845 Walnut Street, 24th Floor
Philadelphia, PA  19103
Tel.: (215) 656-3600
Fax: (215) 567-2310
rhancock@wwdlaw.com

Michaela L. Wallin
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
   Philadelphia, PA  19103
Tel.: (215) 875-3000
Fax: (215) 875-4620
mwallin@bm.net

*Attorneys for Plaintiffs and the*
*Proposed FLSA Collective*